| Fill in this information to identify the case: |
|---|
| United States Bankruptcy Court for the: |
| Northern District of Illinois |
| Case number (*If known*): _____ Chapter 15 |

❑ Check if this is an amended filing

## Official Form 401

# Chapter 15 Petition for Recognition of a Foreign Proceeding   12/15

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).**

| | | |
|---|---|---|
| 1. | **Debtor's name** | Lion Electric Holding USA Inc. |

2. **Debtor's unique identifier**

**For non-individual debtors:**

☑ Federal Employer Identification Number (EIN)  8 7 – 3 6 9 0 6 9 9

❑ Other _____ . Describe identifier _____ .

**For individual debtors:**

❑ Social Security number:   xxx – xx– ____ ____ ____ ____

❑ Individual Taxpayer Identification number (ITIN): **9** xx – xx – ____ ____ ____ ____

❑ Other _____ . Describe identifier _____ .

3. **Name of foreign representative(s)**   The Lion Electric Company

4. **Foreign proceeding in which appointment of the foreign representative(s) occurred**   Proceeding under the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (as amended) before the Superior Court of Québec (Commercial Division), No. 700-11-022385-241

5. **Nature of the foreign proceeding**

*Check one:*

❑ Foreign main proceeding
❑ Foreign nonmain proceeding
☑ Foreign main proceeding, or in the alternative foreign nonmain proceeding

6. **Evidence of the foreign proceeding**

☑ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.

❑ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.

❑ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached.

_____
_____

7. **Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)?**

❑ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.)

☑ Yes

| Debtor | Lion Electric Holding USA Inc. | Case number (*if known*) |
|---|---|---|
| | Name | |

---

**8. Others entitled to notice**

Attach a list containing the names and addresses of:

(i)   all persons or bodies authorized to administer foreign proceedings of the debtor,

(ii)  all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and

(iii) all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

---

**9. Addresses**

Country where the debtor has the center of its main interests:

Canada

Debtor's registered office:

2915 Ogletown Road
Number      Street

P.O. Box

Newark, Delaware                     19713
City           State/Province/Region      ZIP/Postal Code

U.S.A.
Country

Individual debtor's habitual residence:

Number      Street

P.O. Box

City           State/Province/Region      ZIP/Postal Code

Country

Address of foreign representative(s):

921 chemin de la Riviere-du-Nord
Number      Street

P.O. Box

Saint-Jerome, Québec               J7Y  5G2
City           State/Province/Region      ZIP/Postal Code

Canada
Country

---

**10. Debtor's website** (URL)

https://thelionelectric.com/en

---

**11. Type of debtor**

*Check one:*

☑ Non-individual (*check one*):

    ☑ Corporation. Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

    ☐ Partnership

    ☐ Other. Specify: _____

☐ Individual

---

Debtor   Lion Electric Holding USA Inc.
         Name

Case number (if known)

---

**12. Why is venue proper in this district?**

Check one:

☑ Debtor's principal place of business or principal assets in the United States are in this district.

☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district:

_____

☐ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:

_____

**13. Signature of foreign representative(s)**

I request relief in accordance with chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct,

✗ _____
   Signature of foreign representative

Richard Coulombe, Chief Financial Officer of The Lion Electric Company
Printed name

Executed on   12/18/2024
              MM / DD / YYYY

✗ _____
   Signature of foreign representative

_____
Printed name

Executed on _____
            MM / DD / YYYY

**14. Signature of attorney**

✗ _____
   Signature of Attorney for foreign representative

Date   12/18/2024
       MM / DD / YYYY

Jonathan E. Aberman
Printed name
Locke Lord LLP
Firm name
111 S Wacker Drive, Suite 4100
Number      Street
Chicago                          IL        60606
City                             State     ZIP Code

(312) 443-0700                   jon.aberman@lockelord.com
Contact phone                    Email address

6255541                          IL
Bar number                       State

---

## **Exhibit**

Certified Copy of Initial Order



**SUPERIOR COURT**
(Commercial Division)

**CANADA**
**PROVINCE OF QUÉBEC**
**DISTRICT OF TERREBONNE**

NO: **700-11-022385-241**
DATE: **DECEMBER 18, 2024**

---

**PRESIDING: THE HONOURABLE MICHEL A. PINSONNAULT, J.S.C.**

---

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, RSC 1985, C C-36 OF:

**THE LION ELECTRIC COMPANY**

-and-

**LION ELECTRIC FINANCE CANADA INC.**

-and-

**LION ELECTRIC VEHICLE FINANCE CANADA INC.**

-and-

**LION ELECTRIC HOLDING USA INC.**

-and-

**NORTHERN GENESIS ACQUISITION CORP.**

-and-

**THE LION ELECTRIC CO. USA INC.**

-and-

**LION ELECTRIC MANUFACTURING USA INC.**

-and-

**LION ELECTRIC FINANCE USA INC.**

      Debtors/Applicants

-and-

**DELOITTE RESTRUCTURING INC.**

      Proposed Monitor

---

**INITIAL ORDER**

---

_____

_____

[1]  **ON READING** the Debtors' *Application for the Issuance of an Initial Order, an Amended and Restated Initial Order and a Sale and Investment Solicitation Process Order* dated December 17, 2024 (the "**Application**") filed pursuant to the *Companies' Creditors Arrangement Act*, RSC 1985, c C-36 (the "**CCAA**"), the sworn statement and the exhibits filed in support thereof;

[2]  **CONSIDERING** the First Report to the Court submitted by Deloitte Restructuring Inc. in its capacity as Proposed Monitor dated December 17, 2024 (the "**Monitor's Report**");

[3]  **CONSIDERING** the notification of the Application;

[4]  **CONSIDERING** the submissions of the attorneys present at the hearing on the Application and the testimony of the representative of the Proposed Monitor;

[5]  **CONSIDERING** the provisions of the CCAA;

**THE COURT HEREBY:**

[6]  **GRANTS**, in part, the Application.

[7]  **ISSUES** an order pursuant to the CCAA (this "**Order**"), divided under the following headings:

    I.     Service
    II.    Definitions
    III.   Effective Time
    IV.   Application of the CCAA and Administrative Consolidation
    V.    Plan of Arrangement
    VI.   Stay of Proceedings against the Debtors and the Property
    VII.   Stay of Proceedings against the Directors and Officers
    VIII.  Possession of Property and Operations
    IX.   No Exercise of Rights or Remedies
    X.    No Interference with Rights
    XI.   Continuation of Services
    XII.   Non-Derogation of Rights
    XIII.  Interim Financing
    XIV.  CDPQ-Finalta Lenders
    XV.   Financial Projections
    XVI.  Directors' and Officers' Indemnification and Charge
    XVII.  KERP Charge
    XVIII. Restructuring
    XIX.  Powers of the Monitor
    XX.   Priorities and General Provisions Relating to CCAA Charges

XXI.   Deemed Extension of the Stay Period and Comeback Hearing
XXII.  Foreign Proceedings
XXIII. General

## I.   SERVICE

[8]    **ORDERS** that any prior delay for the presentation of the Application is hereby
abridged and validated so that the Application is properly returnable today and
hereby dispenses with further service thereof.

[9]    **DECLARES** that sufficient prior notice of the presentation of this Application has
been given by the Debtors to interested parties, including the secured creditors,
who are likely to be affected by the charges created herein.

## II.   DEFINITIONS

[10]   **ORDERS** that all capitalized terms not otherwise defined herein shall have the
meanings ascribed to them in the Application.

## III.   EFFECTIVE TIME

[11]   **DECLARES** that this Order and all its provisions are effective as of 12:01 a.m.
Montréal time, Province of Québec, on **December 18, 2024** (the "**Effective Time**").

## IV.   APPLICATION OF THE CCAA AND ADMINISTRATIVE CONSOLIDATION

[12]   **DECLARES** that the Debtors are debtor companies to which the CCAA applies.

[13]   **ORDERS** the consolidation of these CCAA proceedings of the Debtors (the "**CCAA
Proceedings**") under one single Court file and that all existing and future
proceedings, filings, and other matters in relation to the CCAA Proceedings be filed
jointly and together in Court file number 700-11-022385-241.

[14]   **DECLARES** that the consolidation of the CCAA Proceedings in respect of the
Debtors shall be for administrative purposes only and shall not effect a
consolidation of the assets and property or of the debts and obligations of each of
the Debtors, including, without limitation, for the purposes of any Plan or Plans that
may be hereafter proposed.

## V.   PLAN OF ARRANGEMENT

[15]   **DECLARES** that one or more of the Debtors shall have the authority to file with
this Court and to submit to its creditors one or more plans of compromise or
arrangement (a "**Plan**") in accordance with the CCAA.

## VI. STAY OF PROCEEDINGS AGAINST THE DEBTORS AND THE PROPERTY

[16] **ORDERS** that, until and including **January 7, 2025**, or such later date as the Court may order (the "**Stay Period**"), no proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**"), including but not limited to seizures, executions, writs of seizure or execution, any and all actions, applications, arbitration proceedings and other lawsuits existing at the time of this Order in which any of the Debtors is a defendant, party or respondent (either individually or with other Persons (as defined below)) shall be commenced or continued against or in respect of any of the Debtors, or affecting any of the Debtors' business operations and activities (the "**Business**") or any of the Property (as defined herein below), including as provided in paragraph [23] herein except with leave of this Court. All Proceedings currently under way against or in respect of the Debtors or affecting the Business or the Property are hereby stayed and suspended pending further order of this Court, the whole subject to Section 11.1 of the CCAA.

[17] **ORDERS** that the rights of His Majesty in right of Canada and His Majesty in right of a Province are suspended in accordance with the terms and conditions of Section 11.09 of the CCAA.

## VII. STAY OF PROCEEDINGS AGAINST DIRECTORS AND OFFICERS

[18] **ORDERS** that during the Stay Period and except as permitted under Subsection 11.03(2) of the CCAA, no Proceeding may be commenced, or continued against any former, present or future director or officer of the Debtors nor against any person deemed to be a former, present or future director or an officer of any of the Debtors under Subsection 11.03(3) of the CCAA (each, a "**Director**" or an "**Officer**", as applicable, and collectively the "**Directors and Officers**") in respect of any claim against such Director or Officer which arose prior to the Effective Time and which relates to any obligation of the Debtors where it is alleged that any of the Directors and Officers is under any law liable in such capacity for the payment of such obligation.

## VIII. POSSESSION OF PROPERTY AND OPERATIONS

[19] **ORDERS** that the Debtors shall remain in possession and control of their present and future assets, rights, undertakings and properties of every nature and kind whatsoever, and wherever situated, including all proceeds thereof and all bank accounts (collectively the "**Property**"), the whole in accordance with the terms and conditions of this Order.

[20] **ORDERS** that the Debtors shall be entitled but not required to pay the following expenses, whether incurred prior to or after this Order, provided that such expenses are made in strict accordance with the Projections (as defined below), subject to the Variance Threshold (as defined below) or with the prior consent of the Monitor and the Interim Lender:

(a)    all outstanding and future wages, salaries, expenses, benefits and vacation pay payable on or after the date of this Order, in each case incurred in the ordinary course of business and consistent with existing compensation policies and arrangements; and

(b)    the fees and disbursements of any advisor or counsel retained or employed by the Debtors in connection with these proceedings, at their standard rates and charges.

[21]    **ORDERS** that the Debtors are authorized to remit or pay the following expenses, in accordance with legal requirements, provided that such expenses are made in strict accordance with the Projections (as defined below), subject to the Variance Threshold (as defined below), or with the prior written consent of the Monitor and the Interim Lender:

(a)    any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from employees' wages, including, without limitation, amounts in respect of (i) employment insurance, (ii) Canada Pension Plan, (iii) Québec Pension Plan, and (iv) income taxes;

(b)    all goods and services, harmonized sales or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by the Debtors and in connection with the sale of goods and services by the Debtors, but only where such Sales Taxes are accrued or collected after the date of this Order.

## IX.   NO EXERCISE OF RIGHTS OR REMEDIES

[22]    **ORDERS** that, during the Stay Period, and subject to, *inter alia*, Section 11.1 of the CCAA, all rights and remedies, of any individual, natural person, firm, corporation, partnership, limited liability company, trust, joint venture, association, organization, governmental body or agency, landlord or any other entity, whether based in Canada, in the US or elsewhere (all of the foregoing, collectively being "**Persons**" and each being a "**Person**"), against or in respect of any of the Debtors, or affecting the Business, the Property or any part thereof, including, any contractual right of any third party to modify any of the Debtors' existing rights as a result of any event of default or of non-performance by the Debtors under any agreement (including any bond, surety, indemnity or other comparable agreement), including by reason of the insolvency of the Debtors, the commencement CCAA Proceedings and/or any admissions or evidence filed by the Debtors in the CCAA Proceedings, are hereby stayed and suspended except with leave of this Court.

[23]    **DECLARES** that, to the extent any rights, obligations, or prescription, time or limitation periods, including, without limitation, to file grievances, relating to the Debtors or any of the Property or the Business may expire (other than pursuant to

the terms of any contracts, agreements or arrangements of any nature whatsoever), the terms of such rights, obligations, or prescription, time or limitation periods shall hereby be deemed to be extended by a period equal to the Stay Period. Without limitation to the foregoing, in the event that the Debtors, or any of them, become(s) bankrupt or a receiver as defined in Subsection 243(2) of the *Bankruptcy and Insolvency Act* (Canada) (the "**BIA**") is appointed in respect of the Debtors, the period between the date of this Order and the day on which the Stay Period ends shall not be calculated in respect of the Debtors in determining the 30-day periods referred to in Sections 81.1 and 81.2 of the BIA.

## X.   NO INTERFERENCE WITH RIGHTS

[24]   **ORDERS** that during the Stay Period, no Person shall discontinue, fail to honour, fail to renew per the same terms and conditions, alter, interfere with, repudiate, resiliate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Debtors, except with the written consent of the Debtors, as applicable, and the Monitor, or with leave of this Court.

## XI.   CONTINUATION OF SERVICES

[25]   **ORDERS** that during the Stay Period and subject to paragraph [27] hereof and Subsection 11.01 of the CCAA, all Persons having verbal or written agreements with the Debtors or statutory or regulatory mandates for the supply of goods or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation, utility or other goods or services made available to the Debtors, are hereby restrained until further order of this Court from discontinuing, failing to renew per the same terms and conditions, altering, interfering with, terminating the supply or, where the case may be, interrupting, delaying or stopping the transit of such goods or services as may be required by the Debtors, and that the Debtors shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses, domain names or other services, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the Debtors, without having to provide any security deposit or any other security, in accordance with normal payment practices of the Debtors or such other practices as may be agreed upon by the supplier or service provider and the Debtors, as applicable, with the consent of the Monitor, or as may be ordered by this Court.

[26]   **ORDERS** that, subject to Section 11.01 of the CCAA, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided to the Debtors on or after the date of this Order, nor shall any Person be under any obligation on or after the date of this Order to make further advance of money or otherwise extend any credit to the Debtors.

[27]   **ORDERS** that, without limiting the generality of the foregoing and subject to Section 21 of the CCAA, if applicable, cash or cash equivalents placed on deposit by any of the Debtors with any Person during the Stay Period, whether in an operating account or otherwise for itself or for another entity, shall not be applied by such Person in reduction or repayment of amounts owing to such Person or in satisfaction of any interest or charges accruing in respect thereof; however, this provision shall not prevent any financial institution from: (i) reimbursing itself for the amount of any cheques drawn by the Debtors and properly honoured by such institution, or (ii) holding the amount of any cheques or other instruments deposited into any of the Debtors' accounts until those cheques or other instruments have been honoured by the financial institution on which they have been drawn.

## XII.   NON-DEROGATION OF RIGHTS

[28]   **ORDERS** that, notwithstanding the foregoing, any Person who provided any kind of letter of credit, guarantee or bond (the "**Issuing Party**") at the request of any of the Debtors shall be required to continue honouring any and all such letters, guarantees and bonds, issued on or before the date of this Order, provided that all conditions under such letters, guarantees and bonds are met save and except for defaults resulting from this Order; however, the Issuing Party shall be entitled, where applicable, to retain the bills of lading or shipping or other documents relating thereto until paid.

## XIII.   INTERIM FINANCING

[29]   **ORDERS** that the Debtors are authorized to borrow from National Bank of Canada ("**NBC**"), Fédération des Caisses Desjardins du Québec ("**Desjardins**") and Bank of Montreal ("**BMO**" and together with NBC and Desjardins collectively the "**Interim Lender**"), from time to time, a maximum principal amount of up to USD$6,000,000 (the "**Interim Facility**") outstanding at any time, on the terms and conditions as set forth in the Interim Financing Loan Agreement, Exhibit **R-10** filed in support of the Application (the "**Interim Financing Loan Agreement**"), with the Cash Flow Projections as Appendix B thereto (under seal Exhibit **R-10A**), and in the Interim Financing Documents (as defined hereinafter), to fund the ongoing expenditures of the Debtors and to pay such other amounts as are permitted by the terms of this Order, the Interim Financing Documents and the Projections (as defined below).

[30]   **ORDERS** that the Debtors are hereby authorized to execute and deliver the Interim Financing Loan Agreement together with such other credit agreements, guarantees, security documents and other definitive documents (collectively, with the Interim Financing Loan Agreement, the "**Interim Financing Documents**") as may be required by the Interim Lenders in connection with the Interim Facility and the Interim Financing Loan Agreement, and the Debtors are authorized and ordered to perform all of their obligations under the Interim Financing Documents.

[31]   **ORDERS** that the Debtors shall pay to the Interim Lender or its agent, when due, all amounts owing (including principal, interest, fees and expenses, including,

without limitation, all fees and disbursement of counsel and other advisors (including financial advisors) on a full indemnity basis (the "**Interim Lender's Expenses**") under the Interim Financing Documents and shall perform all of their other obligations to the Interim Lender pursuant to the Interim Financing Documents and this Order.

[32] **DECLARES** that all of the Property of the Debtors is hereby subject to a charge, hypothec and security for an aggregate amount of <u>USD$7,200,000</u> (the "**Interim Lender Charge**") in favour of the Interim Lender as security for all obligations of the Debtors to the Interim Lender with respect to all amounts owing (including principal, interest and the Interim Lender's Expenses) under or in connection with the Interim Financing Documents. The Interim Lender Charge shall subsist without necessity of any publication, registration, recording, filing or perfection, and shall have the priority established by paragraphs [57] and [58] of this Order.

[33] **ORDERS** that the claims of NBC, Desjardins and BMO pursuant to any of its contracts, agreements and arrangements entered into with any of the Debtors, including the DIP Term Sheet and any other Interim Financing Documents, shall not be compromised or arranged pursuant to the Plan or any proposal (a "**Proposal**") to be filed pursuant to the BIA and, notwithstanding any provision of this Order or of any other order to be rendered in the context of these proceedings, NBC, Desjardins and BMO shall remain and be treated, at all times and under all circumstances, as an unaffected creditor in these proceedings (including with respect to the stay of proceedings ordered in this Order) or any other proceedings under the BIA, and in any Plan or Proposal.

[34] **ORDERS** that the Interim Lender may:

    (a)    notwithstanding any other provision of this Order, take such steps from time to time as it may deem necessary or appropriate to register, record or perfect the Interim Lender Charge and the Interim Financing Documents in all jurisdictions where it deems it is appropriate; and

    (b)    notwithstanding the terms of the paragraph to follow, refuse to make any advance to the Debtors if any of them fail to meet the provisions of the DIP Term Sheet, of the Interim Financing Documents, or of this Order or any other order which may eventually be issued by this Court.

[35] **TAKES ACT** of the Debtors' agreement that upon the occurrence of a "DIP Event of Default" under the Interim Financing Loan Agreement, which is continuing, the Interim Lender may, in accordance with the terms of such Interim Financing Loan Agreement, (i) suspend the advance of any further portion of the Interim Facility, (ii) terminate the Interim Lender commitment under the Interim Financing Loan Agreement, (iii) declare all amounts owing under the Interim Financing Loan Agreement to be immediately due and payable (iv) apply for the appointment of a receiver, interim receiver or similar court officer over the Property, including a "super-monitor" with increased powers over the Property and the operations of the

Debtors, to which the Debtors will not oppose to, (v) exercise the powers of a secured creditor under the *Civil Code of Quebec* or any legislation of similar effect, if any, and (vi) exercise all such other rights and remedies under the Interim Financing Documents and this Order or any other order of this Court.

[36]   **ORDERS** that, subject to further order of this Court, no order shall be made varying, rescinding, or otherwise affecting paragraphs [29] to [34](b) hereof unless either (a) notice of an application for such order is served on the Interim Lender by the moving party at least seven (7) days prior to the presentation thereof or (b) the Interim Lender apply for or consent to such order.

## XIV.   CDPQ-FINALTA LENDERS

[37]   **ORDERS** that the claims of Fonds Finalta Capital s.e.c. (a limited partnership acting through Commandité Fonds Finalta Capital Inc. its general partner, itself acting through its manager, Finalta Capital Inc.) ("**Finalta**") and CDPQ Revenu Fixe I Inc. (the "**CDPQ-Finalta Lenders**") pursuant to the credit agreement between the CDPQ-Finalta Lenders, as lenders, and La Compagnie Électrique Lion, dated November 7, 2022, as amended and restated, from time to time, and the guarantees thereunder (collectively, the "**CDPQ-Finalta Loan Agreement**"), shall not be compromised or arranged pursuant to the Plan or any proposal (a "**Proposal**") to be filed pursuant to the BIA and, notwithstanding any provision of this Order or any other order to be rendered in the context of these proceedings, the CDPQ-Finalta Lenders shall remain and be treated, at all times and under all circumstances, as unaffected creditors in these proceedings (including with respect to the stay of proceedings ordered in this Order) or any proceedings under the BIA, and in any Plan or Proposal, but only with respect to the *Biens en priorité de Finalta* (the "***Biens en priorité Finalta***"), as such terms are defined in the *convention entre créanciers* (intercreditor agreement) dated November 7, 2022, entered into among Finalta, in its capacity as agent and hypothecary representative for the CDPQ-Finalta Lenders and NBC, as amended, supplemented, restated or otherwise modified from time to time (the "**NBC/CDPQ-Finalta Intercreditor Agreement**"), and the CDPQ-Finalta Lenders shall not be subject to any limitations on their rights or remedies with respect to the *Biens en priorité Finalta*, shall be entitled to enforce their respective contractual rights, including security interests and claims with respect to the *Biens en priorité Finalta*, and nothing in this Order shall prevent them from exercising any rights under their agreements with respect to the *Biens en priorité Finalta*.

[38]   **ORDERS** the Debtors to forthwith remit any amount which constitutes the *Biens en priorité Finalta* to the CDPQ-Finalta Lenders, provided that any such amounts will be applied to reduce the indebtedness of the Debtors under the CDPQ-Finalta Loan Agreement.

## XV.   FINANCIAL PROJECTIONS

[39]   **ORDERS** that the financial projections filed as Appendix A to the Proposed Monitor's Report (the "**Projections**") are hereby approved and **ORDERS** the Debtors to: (i) comply with the Projections, subject to any negative variance of up to 10% on an aggregate basis (the "**Variance Threshold**") in connection with the *Total Disbursements* set out in the Projections or to (ii) consult and obtain the prior written approval of the Interim Lender in connection with any negative variance to the Projections in excess of the Variance Threshold.

## XVI.   DIRECTORS' AND OFFICERS' INDEMNIFICATION AND CHARGE

[40]   **ORDERS** that the Debtors shall indemnify the Directors and Officers from all claims relating to any obligations or liabilities they may incur and which have accrued by reason of or in relation to their respective capacities as directors or officers of the Debtors after the Effective Time, except where such obligations or liabilities were incurred as a result of such Director's or Officer's gross negligence, willful misconduct or gross or intentional fault as further detailed in Section 11.51 of the CCAA.

[41]   **ORDERS** that the Directors and Officers of the Debtors shall be entitled to the benefit of and are hereby granted a charge, security and hypothec in the Property to the extent of the aggregate amount of USD$2,500,000 (the "**Directors and Officers' Charge**"), as security for the indemnity provided in paragraph [40] hereof as it relates to obligations and liabilities of the Directors and Officers in such capacity, which may arise after the Effective Time. The Directors and Officers' Charge shall have the priority established by paragraphs [57] and [58] of this Order.

[42]   **ORDERS** that, notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors and Officers' Charge, and (b) the Directors and Officers shall only be entitled to the benefit of the Directors and Officers' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts for which the Directors and Officers are entitled to be indemnified in accordance with paragraph [40] of this Order.

## XVII.   KEY EMPLOYEE RETENTION PLAN

[43]   **ORDERS** that the terms of the key employee retention plan (the "**KERP**") reflected Exhibit **R-11** to the Application are hereby approved and the Debtors are hereby authorized to implement the KERP and to make the payments contemplated therein.

[44]   **DECLARES** that the beneficiaries of the KERP are entitled to the benefit of and are hereby granted a charge, hypothec and security affecting the Property to the

extent of the aggregate amount of USD$1,500,000 (the "**KERP Charge**"), having the priority established by paragraphs [57] and [58] of this Order.

## XVIII. RESTRUCTURING

[45] **DECLARES** that, to facilitate the orderly restructuring of their business and financial affairs (the "**Restructuring**") but subject to such requirements as are imposed by the CCAA, the Debtors, in consultation with the Interim Lender, shall have the right, subject to approval of the Monitor or further order of the Court, to:

   (a)   permanently or temporarily cease, downsize, or shut down any of their operations or locations as it deems appropriate and make provision for the consequences thereof in the Plan;

   (b)   pursue all avenues to finance or refinance, market, convey, transfer assign or in any other manner, dispose of the Business or Property, in whole or part, subject to the prior written approval of the Interim Lender and further order of the Court and sections 11.3 and 36 of the CCAA, and under reserve of subparagraph [45](c);

   (c)   convey, transfer, assign, lease, or in any other manner, dispose of the Property, outside of the ordinary course of business, in whole or in part, provided that the price in each case does not exceed $75,000 individually or $250,000 in the aggregate and that the prior approval of the Interim Lender is obtained;

   (d)   terminate the employment of such of their employees or temporarily or permanently lay off such of their employees as the Debtors deem appropriate and, to the extent any amounts in lieu of notice, termination or severance pay or other amounts in respect thereof are not paid in the ordinary course, make provision, on such terms as may be agreed upon between the Debtors, as applicable, and such employees, or failing such agreement, make provision to deal with, any consequences thereof in the Plan, as the Debtors may determine;

   (e)   subject to the provisions of Section 32 of the CCAA, disclaim or resiliate, any of the Debtors' agreements, contracts, or arrangements of any nature whatsoever, with such disclaimers or resiliation to be on such terms as may be agreed between the Debtors and the relevant party, or failing such agreement, to make provision for the consequences thereof in the Plan; and

   (f)   subject to Section 11.3 of the CCAA, assign any rights and obligations of the Debtors.

[46] **DECLARES** that, in order to facilitate the Restructuring, the Debtors, in consultation with the Interim Lender, may also, subject to the approval of the Monitor, or further order of the Court, settle claims of creditors, customers and suppliers that are in dispute, provided that to the extent that any expenses are to

be incurred in connection with the settlement of such claims, such expenses must be made in strict accordance with the Projections (subject to the Variance Threshold), or otherwise with the prior written consent of the Interim Lender.

[47]  **DECLARES** that, if a notice of disclaimer or resiliation is given to a landlord of any of the Debtors pursuant to Section 32 of the CCAA and Subsection [44](e) of this Order, then (a) during the notice period prior to the effective time of the disclaimer or resiliation, the landlord may show the affected leased premises to prospective tenants during normal business hours by giving the Debtors and the Monitor 24 hours' prior written notice and (b) at the effective time of the disclaimer or resiliation, the landlord shall be entitled to take possession of any such leased premises and re-lease any such leased premises to third parties on such terms as any such landlord may determine without waiver of, or prejudice to, any claims or rights of the landlord against the Debtors, provided nothing herein shall relieve such landlord of their obligation to mitigate any damages claimed in connection therewith.

[48]  **ORDERS** that the Debtors shall provide to any relevant landlord notice of any of Debtors' intention to remove any fittings, fixtures, installations, or leasehold improvements at least seven (7) days in advance. If the Debtors have already vacated the leased premises, it shall not be considered to be in occupation of such location pending the resolution of any dispute between the Debtors and the landlord.

[49]  **DECLARES** that, pursuant to subparagraph 7(3)(c) of the *Personal Information Protection and Electronic Documents Act*, SC 2000, c 5, the Debtors are permitted, in the course of these proceedings, to disclose personal information of identifiable individuals in their possession or control to stakeholders or prospective investors, financiers, buyers or strategic partners and to their advisors (individually, a "**Third Party**"), but only to the extent desirable or required to negotiate and complete the Restructuring or the preparation and implementation of the Plan or a transaction for that purpose, provided that the Persons to whom such personal information is disclosed enter into confidentiality agreements with the Debtors binding them to maintain and protect the privacy of such information and to limit the use of such information to the extent necessary to complete the transaction or Restructuring then under negotiation. Upon the completion of the use of personal information for the limited purpose set out herein, the personal information shall be returned to the Debtors or destroyed. If a Third Party acquires personal information as part of the Restructuring or the preparation or implementation of the Plan or a transaction in furtherance thereof, such Third Party may continue to use the personal information in a manner which is, in all respects, identical to the prior use thereof by the Debtors.

## XIX.  POWERS OF THE MONITOR

[50]  **ORDERS** that Deloitte Restructuring Inc. is hereby appointed to monitor the business and financial affairs of the Debtors as an officer of this Court (the

"**Monitor**") and that the Monitor, in addition to the prescribed powers and obligations referred to in Section 23 of the CCAA:

(a)     shall, as soon as practicable, (i) publish once a week for two (2) consecutive weeks or as otherwise directed by the Court, in *La Presse+* and the *Globe and Mail National Edition* and (ii) within five (5) business days after the date of this Order (A) post on the Monitor's website (the "**Website**") a notice containing the information prescribed under the CCAA, (B) make this Order publicly available in the manner prescribed under the CCAA, (C) send, in the prescribed manner, a notice to all known creditors having a claim against the Debtors of more than $1,000, advising them that this Order is publicly available, and (D) prepare a list showing the names and addresses of such creditors and the estimated amounts of their respective claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder;

(b)     shall monitor the Debtors' receipts and disbursements;

(c)     shall assist the Debtors, to the extent required by the Debtors, in dealing with their creditors and other interested Persons during the Stay Period;

(d)     shall assist the Debtors, to the extent required by the Debtors, with the preparation of their cash flow projections and any other projections or reports and the development, negotiation, and implementation of a Plan;

(e)     shall advise and assist the Debtors, to the extent required by the Debtors, to review the Debtors' business and assess opportunities for cost reduction, revenue enhancement and operating efficiencies;

(f)     shall assist the Debtors, to the extent required by the Debtors, with the Restructuring and in their negotiations with their creditors and other interested Persons and with the holding and administering of any meetings held to consider the Plan;

(g)     shall report to the Court on the state of the business and financial affairs of the Debtors or developments in these proceedings or any related proceedings within the time limits set forth in the CCAA and at such time as considered appropriate by the Monitor or as the Court may order and may file consolidated reports for the Debtors;

(h)     shall report to the Interim Lender and to the CDPQ-Finalta Lenders, on demand and as required by the Interim Lender and the CDPQ-Finalta Lenders, on the state of the operations, business and financial affairs of the Debtors or developments in these proceedings or any related proceedings, including with respect to any solicitation efforts to be made in connection with the Debtors' Property;

(i)      shall report to this Court and interested parties, including but not limited to creditors affected by any Plan, with respect to the Monitor's assessment of, and recommendations with respect to, such Plan;

(j)      may retain and employ such agents, advisors and other assistants as are reasonably necessary for the purpose of carrying out the terms of this Order, including, without limitation, one or more entities related to or affiliated with the Monitor;

(k)      may engage legal counsel to the extent the Monitor considers necessary in connection with the exercise of its powers or the discharge of its obligations in these proceedings and any related proceeding, under this Order or under the CCAA;

(l)      may give any consent or approval as may be contemplated by the Order or the CCAA;

(m)      may hold and administer funds in connection with arrangements made among the Debtors, any counterparties and the Monitor, or by Order of this Court; and

(n)      may perform such other duties as are required by this Order or the CCAA or by this Court from time to time.

Unless expressly authorized to do so by this Court, the Monitor shall not otherwise interfere with the business and financial affairs carried on by the Debtors, and the Monitor is not empowered to take possession of the Property nor to manage any of the business and financial affairs of the Debtors nor shall the Monitor be deemed to have done so.

[51]    **ORDERS** that, without limiting the generality of anything herein, the Debtors and their Directors, Officers, employees and agents, accountants, auditors and all other Persons having notice of this Order shall forthwith provide the Monitor with unrestricted access to all of the Business and Property, including, without limitation, the premises, books, records, data, including data in electronic form, and all other documents of the Debtors in connection with the Monitor's duties and responsibilities hereunder.

[52]    **DECLARES** that the Monitor may provide creditors and other relevant stakeholders of the Debtors with information in response to requests made by them in writing addressed to the Monitor and copied to the counsel for the Debtors. In the case of information that the Debtors have advised the Monitor as being confidential, proprietary, or competitive, the Monitor shall not provide such information to any Person without the consent of the Debtors unless otherwise directed by this Court.

[53] **DECLARES** that if the Monitor, in its capacity as Monitor, carries on the business of the Debtors or continues the employment of the Debtors' employees, the Monitor shall benefit from the provisions of Section 11.8 of the CCAA.

[54] **DECLARES** that Section 215 of the BIA applies *mutatis mutandis*, and no action or other proceedings shall be commenced against the Monitor relating to its appointment, its conduct as Monitor or the carrying out of the provisions of any order of this Court, except with prior leave of this Court, on at least seven (7) days' notice to the Monitor and its counsel. The entities related to or affiliated with the Monitor shall also be entitled to the protection, benefits and privileges afforded to the Monitor pursuant to this paragraph.

[55] **ORDERS** that the Debtors shall pay, in accordance with the Projections, the reasonable fees and disbursements of the Monitor, the Monitor's legal counsel, the Debtors' legal counsel, the Interim Lender's legal counsel and financial advisor (if required), directly related to these proceedings, a Plan and the Restructuring, whether incurred before or after this Order, and shall be authorized to provide each with a reasonable retainer in advance on account of such fees and disbursements, if so requested.

[56] **DECLARES** that the Monitor, the Monitor's legal counsel (Lavery, De Billy LLP), the legal counsel for the Debtors (Stikeman Elliott LLP, Troutman Pepper Hamilton Sanders LLP and Locke Lord LLP), the legal (Fasken Martineau DuMoulin LLP and Chapman and Cutler LLP) and financial advisors, if required, for the Interim Lender, and National Bank Financial Inc., as security for the professional fees and disbursements incurred both before and after the making of this Order and directly related to these proceedings, the Plan and the Restructuring, be entitled to the benefit of and are hereby granted a charge, hypothec and security in the Property, to the extent of the aggregate amount of USD$800,000 (the "**Administration Charge**"), having the priority established by paragraphs [57] and [58] of this Order;

## XX.   PRIORITIES AND GENERAL PROVISIONS RELATING TO CCAA CHARGES

[57] **DECLARES** that the priorities of the Administration Charge, the Directors and Officers' Charge, the Interim Lender Charge, the KERP Charge and the Financial Advisor Charge (collectively, the "**CCAA Charges**"), as between such CCAA Charges with respect to any Property to which they apply, shall be as follows:

    (a)    first, the Administration Charge;

    (b)    second, the Directors and Officers' Charge;

    (c)    third, the Interim Lender Charge; and

    (d)    fourth, the KERP Charge;

(e)    fifth, the Financial Advisor Charge.[1]

[58]   **DECLARES** that each of the CCAA Charges shall rank in priority to any and all claims, rights, hypothecs, mortgages, liens, security interests, priorities, charges, deemed trusts, encumbrances or security of whatever nature or kind, whether or not they have been registered, published or filed (collectively, "**Encumbrances**") affecting the Property charged by such Encumbrances; provided that, and notwithstanding the foregoing or anything else to the contrary, the CCAA Charges shall take rank, in accordance with their respective rank provided for herein, immediately following all existing movable hypothecs and security agreements granted by the Applicants to the CDPQ-Finalta Lenders, but only with respect to the *Biens en priorité Finalta*, as such term is defined in the NBC/CDPQ-Finalta Intercreditor Agreement.

[59]   **ORDERS** that, except as otherwise expressly provided for herein, the Debtors shall not grant any Encumbrances in or against any Property that rank in priority to, or *pari passu* with, any of the CCAA Charges unless the Debtors, as applicable, obtain the prior written consent of the Monitor and of the Interim Lender and the prior approval of the Court.

[60]   **DECLARES** that each of the CCAA Charges shall attach, having the priority established by paragraphs [57] and [58] of this Order, as of the Effective Time, to all present and future Property of the Debtors, notwithstanding any requirement for the consent of any party to any such charge or to comply with any condition precedent.

[61]   **DECLARES** that the CCAA Charges and the rights and remedies of the beneficiaries of the CCAA Charges, as applicable, shall be valid and enforceable and not otherwise be limited or impaired in any way by: (i) these proceedings and the declarations of insolvency made herein; (ii) any application(s) for bankruptcy order(s) issued pursuant to BIA, or any bankruptcy order made pursuant to such application(s) or any assignment(s) in bankruptcy made or deemed to be made in respect of any of the Debtors; or (iii) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any agreement, lease, sublease, offer to lease or other arrangement which binds the Debtors (a "**Third-Party Agreement**"), and notwithstanding any provision to the contrary in any Third Party Agreement:

(a)    the creation of any of the CCAA Charges shall not create nor be deemed to constitute a breach by the Debtors of any Third-Party Agreement to which any of the Debtors is a party; and

(b)    the beneficiaries of the CCAA Charges shall not have any liability to any Person whatsoever as a result of any breach of any Third-Party Agreement caused by or resulting from the creation of the CCAA Charges.

---

[1] As such term is defined and provided for in the SISP Order issued concurrently with this Order.

[62]  **DECLARES** that notwithstanding: (i) these proceedings and the declarations of insolvency made herein; (ii) any application(s) for bankruptcy order(s) issued pursuant to the BIA, or any bankruptcy order made pursuant to such application(s) or any assignment(s) in bankruptcy made or deemed to be made in respect of any of the Debtors; and (iii) the provisions of any federal or provincial statute, the payments or disposition of Property made by any of the Debtors pursuant to this Order and the granting of the CCAA Charges, do not and will not constitute settlements, fraudulent preferences, fraudulent conveyances or other challengeable or reviewable transactions or conduct meriting an oppression remedy under any applicable law.

[63]  **DECLARES** that the CCAA Charges shall be valid and enforceable as against all Property of the Debtors charged by the CCAA Charges and against all Persons, including, without limitation, any trustee in bankruptcy, receiver, receiver and manager or interim receiver any of the Debtors.

## XXI.  DEEMED EXTENSION OF THE STAY PERIOD AND COMEBACK HEARING

[64]  **ORDERS** that on December 27, 2024, at 4 P.M., the Stay Period shall be extended to <u>January 7, 2025</u>, unless any Person wishing to object to such deemed extension serves a detailed written contestation stating the objection to the deemed extension and the grounds for such objection to the Applicants and the Monitor and files with the Court such contestation, **the whole no later than at 11 A.M. on December 23, 2024**.

[65]  **ORDERS** that, in the event the Stay Period has not been extended pursuant to paragraph 64 of this Order, a hearing on the extension of the Stay Period shall take place on **December 27, 2024, at 9:30 A.M.** in a room to be determined of the St-Jérôme Courthouse or on any other date determined by the Court and to be communicated to the service list prepared by the Monitor's counsel in connection with these CCAA proceedings (the "**Service List**").

[66]  **ORDERS** that, in the event the Stay Period has been extended to January 7, 2024, pursuant to paragraph 64 of this Order or pursuant to a subsequent order of this Court, a full hearing on the orders sought in the Application shall take place on **January 7, 2024, at 9:30 A.M.** (the "**Comeback Hearing**"), at a time and in a room, including virtually, of the Saint-Jérôme Courthouse to be communicated to the Service List or at any other date, time and place determined by the Court and to be communicated to the Service List.

[67]  **ORDERS** that any Person wishing to object to the remainder of the reliefs sought in the Application at the Comeback Hearing must serve responding materials or a written notice stating such party's objection and the grounds for the same (a "**Notice of Objection**") to the Debtors and the Monitor (and their respective counsels), with a copy to all other Persons on the service list prepared for the purpose of these proceedings, <u>no later than 5:00 p.m. on the date that is three (3)</u>

calendar days prior to the presentation of such application or motion (the "**Objection Deadline**").

[68]  **ORDERS** that, if no Notice of Objection is served by the Objection Deadline, the Judge having carriage of these proceedings (the "**Presiding Judge")** the Debtors' counsels will advise the Presiding Judge of the same, and the latter may determine: (a) whether such hearing will be in person, by videoconference, by telephone or by written submissions only; and (b) the parties from whom submissions are required (collectively, the "**Hearing Details**"). The Debtors' counsel shall advise all Persons on the Service List of the Hearing Details.

[69]  **ORDERS** that, if a Notice of Objection is served by the Objection Deadline, all interested parties shall appear before the Presiding Judge at the Comeback Hearing, to either (i) proceed on some or all of the remainder of the relief sought by the Debtors as part of the Application and/or (ii) establish a schedule for the delivery of materials and the hearing on the matters raised in the Notice of Objection, and render such other orders as the Court may deem appropriate in the circumstances.

## XXII. FOREIGN PROCEEDINGS

[70]  **ORDERS** that The Lion Electric Company is hereby authorized and empowered, but not required, to act as foreign representative (in such capacity, the "**Foreign Representative**") in respect of the within proceedings for the purpose of having these proceedings recognized and approved in a jurisdiction outside of Canada.

[71]  **ORDERS** that the Foreign Representative is hereby authorized to apply for foreign recognition and approval of these proceedings in the United States pursuant to chapter 15 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

[72]  **DECLARES** that, for the purposes of any applications authorized by paragraphs [70] and [71], the Debtors' centre of main interest is located in the province of Québec, Canada.

## XXIII. GENERAL

[73]  **ORDERS** that no Person shall commence, proceed with or enforce any Proceedings against any of the Directors and Officers, employees, legal counsel or financial advisors of the Debtors or of the Monitor in relation to the Business or Property of the Debtors, without first obtaining leave of this Court, upon seven (7) days' written notice to the Debtors' counsel, the Monitor's counsel, and to all those referred to in this paragraph whom it is proposed to be named in such Proceedings.

[74]  **DECLARES** that this Order and any proceeding or sworn statement leading to this Order shall not, in and of themselves, constitute a default or failure to comply by the Debtors under any statute, regulation, licence, permit, contract, permission, covenant, agreement, undertaking or other written document or requirement.

[75]   **DECLARES** that, except as otherwise specified herein, the Debtors and the Monitor are at liberty to serve any notice, proof of claim form, proxy, circular or other document in connection with these proceedings by forwarding copies by prepaid ordinary mail, courier, personal delivery or electronic transmission to Persons or other appropriate parties at their respective given addresses as last shown on the records of the Debtors and that any such service shall be deemed to be received on the date of delivery if by personal delivery or electronic transmission, on the following business day if delivered by courier, or three (3) business days after mailing if by ordinary mail.

[76]   **DECLARES** that the Debtors and any party to the proceedings may serve any court materials in these proceedings on all represented parties electronically, by emailing an electronic copy of such materials to counsels' email addresses as provided for on the Service List.

[77]   **DECLARES** that, unless otherwise provided herein, under the CCAA, or ordered by this Court, no document, order or other material need be served on any Person in respect of these proceedings, unless such Person has served a Notice of Appearance on counsel for the Debtors and counsel for the Monitor and has filed such notice with this Court, or appears on the Service List, save and except when an order is sought against a Person not previously involved in these proceedings.

[78]   **DECLARES** that the Debtors or the Monitor may, from time to time, apply to this Court for directions concerning the exercise of their respective powers, duties and rights hereunder or in respect of the proper execution of this Order on notice only to each other.

[79]   **DECLARES** that this Order and all other orders in these proceedings shall have full force and effect in all provinces and territories in Canada.

[80]   **AUTHORIZES** the Debtors or the Monitor to apply as they may consider necessary or desirable, with the prior written approval of the Interim Lender, with or without notice, to any other court or administrative body, whether in Canada, the United States of America, or elsewhere, for orders which aid and complement this Order and any subsequent orders of this Court, including, without limitation to the foregoing, an order under Chapter 15 of the *U.S. Bankruptcy Code*. All courts and administrative bodies of all such jurisdictions are hereby respectively requested to make such orders and to provide such assistance to the Debtors, the Monitor and the Foreign Representative as may be deemed necessary or appropriate for that purpose.

[81]   **REQUESTS** the aid and recognition of any Court, tribunal, regulatory or administrative body in Canada, the United States of America or elsewhere, to give effect to this Order and to assist the Debtors, the Monitor, and their respective agents in carrying out the terms of this Order. All Courts, tribunals, regulatory and administrative bodies are hereby requested to make such orders and to provide such assistance to the Debtors, the Monitor and the Foreign Representative as

may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor or the authorized representative of the Debtors, including the Foreign Representative in any foreign proceeding, to assist the Debtors, and the Monitor, and to act in aid of and to be complementary to this Court, in carrying out the terms of this Order.

[82]    **ORDERS** that Appendix B to the Interim Financing Term Sheet (Exhibit **R-10A**), a summary table setting out the material terms of the KERP and the KERP letters (Exhibit **R-11**) and the copy of the December NBF Engagement Letter (Exhibit **R-12**) are confidential and are filed under seal until further order of the Court.

[83]    **ORDERS** the provisional execution of this Order notwithstanding any appeal and without security.

[84]    **THE WHOLE WITHOUT COSTS.**

Digitally signed by
Michel A. Pinsonnault
Date: 2024.12.18
13:35:01 -05'00'

The Honourable Michel A. Pinsonnault, J.S.C.
JP1736

Date of hearing: December 18, 2024

COPIE CERTIFIÉE CONFORME
AU DOCUMENT DÉTENU PAR LA COUR

GREFFIÈRE-ADJOINTE

Maryse Asselin

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| In re:<br><br>The Lion Electric Company, *et al.*,<br><br>    Debtors in a Foreign Proceeding.[1] | Chapter 15<br><br>Case No. 24-_____ (___)<br><br>(Joint Administration Requested) |

**VERIFIED LIST PURSUANT TO RULE 1007(a)(4) OF THE FEDERAL RULES OF**
**BANKRUPTCY PROCEDURE**

    The Lion Electric Company, in its capacity as the authorized foreign representative ("Lion Electric" or the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors"), subject to proceedings (the "Canadian Proceedings") currently pending before the Superior Court of Québec (Commercial Division) (the "Canadian Court") and initiated pursuant to the Companies' Creditors Arrangement Act, RSC 1985, c C-36, as amended, respectfully submits the following, pursuant to Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure:

**I.**    **All Persons or Bodies Authorized to Administer Foreign Proceedings of the Debtors**

    The Lion Electric Company
    921 chemin de la Riviere-du-Nord
    Saint-Jerome, Québec, Canada J7Y 5G2

    Deloitte Restructuring Inc.
    8 Adelaide St. West, Suite 200
    Toronto, ON M5H 0A9

---

[1]    The Debtors in these chapter 15 proceedings, together with the last four digits of their business number or employment identification number, as applicable, are: The Lion Electric Company (6310); Lion Electric Finance Canada Inc. (8102) ("Lion Finance Canada"); Lion Electric Vehicles Finance Canada Inc. (7415) ("Lion Vehicle Finance Canada"); Lion Electric Holding USA Inc. (0699) ("Lion Holding USA"); Northern Genesis Acquisition Corp. (7939) ("Northern Genesis"); The Lion Electric Co. USA Inc. (9919) ("Lion Electric USA"); Lion Electric Manufacturing USA, Inc. (0766) ("Lion Manufacturing USA"); and Lion Electric Finance USA, Inc. (4755) ("Lion Finance USA"). The location of the Debtors' headquarters and the Debtors' foreign representative is: 921 chemin de la Riviere-du-Nord, Saint-Jerome, Quebec, Canada J7Y 5G2.

Lion Electric has been appointed by the Canadian Court as the Foreign Representative of the Debtors in the Canadian Proceedings and Deloitte Restructuring Inc. has been appointed Monitor in the Canadian Proceedings.   Other than the Canadian Proceedings, the Foreign Representative believes there are no foreign proceedings pending with respect to the Debtors.

**II.     All Parties to Litigation Pending in the United States in which a Debtor is a Party at the Time of Filing the Chapter 15 Petitions**

See **<u>Schedule I</u>** attached hereto.

**III.    Entities Against Whom Provision Relief is Sought Pursuant to 11 U.S.C. § 1519**

See **<u>Schedule 2</u>** attached hereto.

## Schedule I

## Litigation Parties

1.    *Ahuva Schachter et al.*, v. *Ian Robertson, Ken Manget, Christopher Jarratt, Michael Hoffman, Paul Dalglish, Brad Sparkes, Robert Schaefer, Mark Bedard, Nicolas Brunet, and The Lion Electric Company*, Case No. 2023-1112 (Del. Ch. Ct. 2023).

**ROBBINS GELLER RUDMAN & DOWD LLP**
Randall J. Baron, Benny C. Goodman III, and
Erik W. Luedeke
655 W. Broadway. Suite 1900
San Diego, CA 92101

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein and Eitan Kimelman
60 East 42nd Street, 46th Floor
New York, NY 10165

**ABRAHAM, FRUCHTER &
TWERSKY, LLP**
Jack G. Fruchter
450 Seventh Avenue, 38th Floor
New York, NY 10123

**GRANT & EISENHOFER P.A.**
Christine M, Mackintosh and Kelly L. Tucker
123 S. Justison Street, 7th Floor
Wilmington, DE 19801

**ROBBINS LLP**
Brian J. Robbins, Gregory E. Del Gaizo, and
Mario D. Valdovinos
5060 Shoreham Place, Suite 300
San Diego, CA 92122

**MICHAEL KLAUSNER**
559 Nathon Abbott Way
Stanford, CA 94305

**ROBBINS GELLER RUDMAN
& DOWD LLP**
Christopher H. Lyons and Tayler D. Bolton
1521 Concord Pike, Suite 301
Wilmington, DE 19803

**GRANT & EISENHOFER P.A.**
David Wissbroecker
2325 3rd Street, Suite 329
San Francisco, CA 94107

2.    *Alex Bouchard-A, et al.*, v. *Northern Genesis Acquisition Corp., Ian Robertson, Paul Dalglish, Michael Hoffman, Ken Manget, Brad Sparkes, Robert Schaefer, The Lion Electric Company, Marc Bedard, and Nicolas Brunet Paul*, Case No. 24-cv-02155 (S.D.N.Y. 2024).

**THE ROSEN LAW FIRM, P.A.**
Jacob A. Goldberg and Leah Heifetz-Li
101 Greenwood Avenue
Suite 440
Jenkintown, PA 19046
jgoldberg@rosenlegal.com
lheifetz@rosenlegal.com

Juan Eneas Monteverde
Monteverde & Associates PC
The Empire State Building
350 Fifth Avenue
Suite 4740
New York, NY 10118
212-971-1341
Fax: 212-202-7880
Email: jmonteverde@monteverdelaw.com

**RIGRODSKY LAW, P.A.**
Timothy John MacFall
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
tjm@rl-legal.com

3.     *The Lion Electric Company v. Nikola Corporation*, Case No. 23-cv-00372 (D. Ariz. 2023).

| | |
|---|---|
| **WILENCHIK & BARTNESS P.C.** | **KIRKLAND & ELLIS LLP** |
| Dennis I. Wilenchik | Gabor Balassa and Madelyn A. Morris |
| 2810 North Third Street | 300 North LaSalle |
| Phoenix, AZ 85004 | Chicago, IL 60654 |
| admin@wb-law.com | gbalassa@kirkland.com |
| | madelyn.morris@kirkland.com |

4.     *Samuel Wright, et. al. v. The Lion Electric Co. USA Inc., et al.*, Case No. 24-cv-025028
       (Sup. Cal. Ct. 2024).

**LAUREL EMPLOYMENT LAW APC**
Joshua I. White
Marta Manus
6309 Van Nuys Boulevard, Suite 111
Van Nuys, CA 91401
josh@laurelemploymentlaw.com
marta@laurelemploymentlaw.com

## Schedule II

**Entities Against Whom Provisional Relief is Sought**

| Parties Against Whom Provisional Relief is Sought Pursuant to Section 1519 of the Bankruptcy Code |
|---|
| 909 North 17th Street, LLC |
| 9274-8375 Québec Inc. |
| Adams County Ohio Valley School District |
| Ahuva Schachter |
| Alex Bouchard-A |
| All plaintiffs in Ahuva Schachter et al., v.  Ian Robertson, Ken Manget, Christopher Jarratt, Michael Hoffman, Paul Dalglish, Brad Sparkes, Robert Schaefer, Mark Bedard, Nicolas Brunet, and The Lion Electric Company, Case No. 2023-1112 (Del. Ch. Ct. 2023), including the class sought to be formed in such case |
| All plaintiffs in Alex Bouchard-A, et al., v. Northern Genesis Acquisition Corp., Ian Robertson, Paul Dalglish, Michael Hoffman, Ken Manget, Brad Sparkes, Robert Schaefer, The Lion Electric Company, Marc Bedard, and Nicolas Brunet Paul, Case No. 24-cv-02155 (S.D.N.Y. 2024), including the class sought to be formed in such case |
| All plaintiffs in Samuel Wright, et. al. v. The Lion Electric Co. USA Inc., et al., Case No. 24-cv-025028 (Sup. Cal. Ct. 2024), including the class sought to be formed in such case |
| Altorfer Industries, Inc. |
| AM Bus Company |
| American Transportation |
| Anchor Bay School District |
| Atlanta Public Schools |
| Atlas Toyota Material Handling, LLC |
| Au Gres-Sims School District |
| Aurora West School District |
| Aurora West School District 129 |
| Bank of Montreal |
| Bay City ISD |
| Beacon Mobility |
| Beaverton School District |
| Blue Cross and Blue Shield of Illinois |
| BMO Harris Bank N.A. |
| BMO Harris Equipment Finance Company |
| Britton Deerfield Schools |
| Bureau Valley CUSD #340 |
| Buskager Transportation, LLC |
| California Air Resource Board |
| California Energy Commission |
| Cdpq Revenu Fixe I Inc. |
| Central Indiana Educational Service Center |
| Clarius Partners |
| Clayton County Public Schools |
| Colcord Public Schools |
| Concordia Parish School Board |
| County of Comanche, Lawton Schools |
| County of Hubbard Independant School District 306 |
| CP Castleberry GL Owner, LLC |
| Dale Public Schools |

| Parties Against Whom Provisional Relief is Sought Pursuant to Section 1519 of the Bankruptcy Code |
|---|
| Dassault Systèmes Americas Corp |
| Dearborn Life Insurance Company |
| Denish Bhavsar |
| Department of General Services of California |
| Douglas Neujahr |
| DP Clifford, LLC |
| Educational Services Commission of New Jersey |
| Eldorado Community Unit School District 4 |
| ENGS Commerical Finance Co. |
| Equalis Group |
| Fédération des Caisses Desjardins du Québec |
| Fidelity Security Life Ins. Company |
| Finalta Capital Fund, L.P. |
| Finalta Capital Inc. |
| Fondation Mirella & Lino Saputo |
| Forest Park School District 91 |
| Goshen Community Schools |
| Groupe Mach Inc. |
| Hahn Transportation Auberndale |
| HDI Global Insurance Company |
| Highland Electric Fleets (Canada), ULC |
| Investissement Quebec |
| Jacksonville RE Holdings, LLC |
| Jacques Jaar |
| Jermaine Plane |
| Joliet Industrial CPB2, LLC |
| Kansas Unified School Districts and Interlocal Cooperative Agreements |
| Kickert School Bus Lines, Inc. |
| Lanesboro Public School District |
| Lanett City Schools |
| Larson Development 4000, LLC |
| Larson Development, LLC |
| Latino Express Bus Company |
| Leggett Valley Unified School District |
| Lewis County C-1 School District |
| Liberty Mutual Insurance Company |
| Lovelady Independant School District |
| Mach Holdings Inc. |
| Malone Milton Properties, LLC |
| Manchester Community Schools |
| Maple Valley 4 |
| Marcus-Meriden-Cleghorn Comm School District |
| Matthews Specialty Vehicles |
| McClellan Park |
| McClellan Realty, LLC |

| Parties Against Whom Provisional Relief is Sought Pursuant to Section 1519 of the Bankruptcy Code |
|---|
| Metropolitan Life Insurance Company ( Metlife / Metkc ) |
| Michael Smith |
| Michigan School Business Officials |
| Montgomery Public Schools |
| Morehouse Parish Schools |
| MP Holdings, LLC |
| Naperville Community Unit School District 203 |
| National Bank of Canada |
| NATIONAL HR |
| Natomas Unified School District |
| New York Office of General Services - Procurement Services |
| Nikola Corporation |
| Occupational Health Centers of the SW PA, DBA Concentra |
| Pellston Public Schools |
| Peoria Public Schools District 150 |
| PORTER REALTY |
| Pure Vida Water Technologies |
| PW Fund B Development, LLC |
| Region 7 Purchasing Cooperative Dept. |
| Ricardo Inc. |
| Samhita Gera |
| Samuel Wright |
| Scotland Co. R-I |
| Selma City Schools |
| Selma Unified School District |
| Sheridan School District 2 |
| Sherman Warehouse GP |
| Sipayik Elementary School |
| Smartsheet Inc |
| Sompo International |
| Sourcewell |
| Stanford K-12 Schools |
| State of Maine Department of Administrative and Financial Services - Division of Procurement Services (Department of Education) |
| State of Washington Office of Superintendent of Public Instruction |
| Stockbridge Community Schools |
| Student Transportation of America |
| Synop, Inc. |
| Taylor Business Equipment, LLC |
| TEQlease, Inc. |
| Terreno Auburn |
| Terreno Auburn 400 LLC |
| The Illinois Department of Central Management Services |
| The Interlocal Purchasing System (TIPS) |
| Three Rivers Community Schools |

| Parties Against Whom Provisional Relief is Sought Pursuant to Section 1519 of the Bankruptcy Code |
| --- |
| Toyota Industries Commerical Finance, Inc. |
| Transportation-TSC Beaverton School District |
| Tripp-Delmont SD 33-5 |
| U.S. Customs and Border Protection |
| United Healthcare Insurance Company |
| United States Environmental Protection Agency |
| Van Pool Transportation LLC |
| Vanderbilt Area Schools |
| Vienna HSD 133 Illinois |
| VIM Recyclers |
| Virginia Sheriff's Association |
| Vision Sh Investment L.L.C. |
| Washington State Department of Enterprise Services |
| W-C Joliet Owner IX, L.L.C. |
| Wethersfield Community Unit School District #230 |
| Wex Health Inc |
| Woodstock Community Unit School District 200 |
| Xerox Financial Services LLC |
| Zurich American Insurance Company |
| Zurich North America |

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

<table>
<tr><td>

In re:

The Lion Electric Company, *et al.*,

      Debtors in a Foreign Proceeding.[1]

</td><td>

Chapter 15

Case No. 24-_____ (___)

(Joint Administration Requested)

</td></tr>
</table>

## CORPORATE OWNERSHIP STATEMENT

The Lion Electric Company, in its capacity as the authorized foreign representative ("<u>Lion Electric</u>") of the above-captioned debtors (collectively, the "<u>Debtors</u>"), subject to proceedings currently pending before the Superior Court of Québec (Commercial Division) and initiated pursuant to the Companies' Creditors Arrangement Act, RSC 1985, c C-36, as amended, respectfully submits the following information pursuant to Rules 1007(a)(4) and 7007.1(a) of the Federal Rules of Bankruptcy Procedure:

1.      Debtors Northern Genesis Acquisition Corp., The Lion Electric Co. USA Inc., Lion Electric Manufacturing USA, Inc., and Lion Electric Finance USA, Inc. are wholly owned subsidiaries of Debtor Lion Electric Holding USA Inc.

2.      Debtors Lion Electric Holdings USA Inc., Lion Electric Finance Canada Inc. and Lion Electric Vehicles Finance Canada Inc. are wholly owned subsidiaries of Debtor Lion Electric.

---

[1]    The Debtors in these chapter 15 proceedings, together with the last four digits of their business number or employment identification number, as applicable, are:  The Lion Electric Company (6310); Lion Electric Finance Canada Inc. (8102) ("<u>Lion Finance Canada</u>"); Lion Electric Vehicles Finance Canada Inc. (7415) ("<u>Lion Vehicle Finance Canada</u>"); Lion Electric Holding USA Inc. (0699) ("<u>Lion Holding USA</u>"); Northern Genesis Acquisition Corp. (7939) ("<u>Northern Genesis</u>"); The Lion Electric Co. USA Inc. (9919) ("<u>Lion Electric USA</u>"); Lion Electric Manufacturing USA, Inc. (0766) ("<u>Lion Manufacturing USA</u>"); and Lion Electric Finance USA, Inc. (4755) ("<u>Lion Finance USA</u>").  The location of the Debtors' headquarters and the Debtors' foreign representative is:  921 chemin de la Riviere-du-Nord, Saint-Jerome, Quebec, Canada J7Y 5G2.

3.      Debtor Lion Electric is a public company formed in Québec, Canada.  As of April

4, 2024, no parent company or publicly held corporation owned more than 10% of stock in Debtor

Lion Electric except for the following entities:

| Shareholder | Common Shares Beneficially Owned, Controlled or Directed | Percentage of Outstanding Shares on a Non-Diluted Basis |
|---|---|---|
| Power Energy Corporation | 77,143,685[1] | 34.11% |
| 9368-2672 Quebec Inc. | 25,958,653[2] | 11.47% |

---

[1]    Power Energy Corporation is a wholly owned subsidiary of Power Sustainable Capital Inc., which in turn is a wholly owned subsidiary of Power Corporation of Canada. Power Energy Corporation also holds common shares purchase warrants that are exercisable into 9,842,519 common shares.

[2]    Marc Bedard, CEO—Founder of Lion Electric, has control over, directly and indirectly, a majority of the voting shares of 9368-2672 Québec Inc. Marc Bedard also holds 59,842 common shares. In addition, Mr. Bedard holds common share purchase warrants, options and restricted share units of Lion Electric.

<table>
<tr><td colspan="2" style="background:black;color:white">Fill in this information to identify the case and this filing:</td></tr>
</table>

| | |
|---|---|
| Debtor Name | Lion Electric Holding USA Inc. |
| United States Bankruptcy Court for the: | Northern _____ District of Illinois |
| | (State) |
| Case number (*if known*): | _____ |

## Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☐ *Schedule H: Codebtors* (Official Form 206H)

☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐ Amended *Schedule* ____

☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☑ Other document that requires a declaration Verified List Pursuant to Bankr. Rule 1007(a)(4); Corporate Ownership Statement

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  12/18/2024                    ✗ _Richard Coulombe_ (signature) _____
      MM / DD / YYYY                         Signature of individual signing on behalf of debtor

Richard Coulombe
Printed name

Chief Financial Officer of The Lion Electric Company, Foreign Representative
Position or relationship to debtor